UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GURPREET SINGH JOSSAN (A-Number: 245-442-699),

Petitioner,

v.

ACTING FIELD OFFICE DIRECTOR, *et al*.,

Respondents.

Case No.  1:26-cv-3898-DAD-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Gurpreet Singh Jossan entered the United States in 2023 and was re-detained by ICE in 2026.  Petitioner, proceeding with counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his re-detention without a bond hearing violates the Fifth Amendment. Respondents move to dismiss.  For the following reasons, I recommend that respondents' motion be denied, the petition be granted, and petitioner be immediately released.

**Background**

Petitioner entered the United States in November 2023.  ECF No. 1 ¶ 13.  After being briefly detained, he was issued a Notice to Appear and released on his own recognizance.  *See id.* at 17, 20.  Petitioner has filed for asylum and received employment authorization.  *Id.* ¶¶ 16-17. Petitioner also alleges that he has complied with all conditions of his release and has no criminal history; respondents do not contest these allegations.  *See id.* ¶ 15; ECF No. 9.

1

In April 2026, petitioner was re-detained by ICE "at a truck weight station, without any intervening violation, criminal charge, or failure to appear." ECF No. 1 ¶ 19. There is no allegation or evidence that petitioner has received a bond hearing; on the contrary, respondents assert that "petitioner is subject to mandatory detention and thus ineligible for a bond hearing." *See* ECF No. 9 at 1.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his re-detention without a bond hearing violates his Fifth Amendment Due Process rights. ECF No. 1 ¶¶ 43-54. Notably, respondents offer little response to petitioner's due process claim. Instead, respondents assert that petitioner is an "applicant for admission" within the meaning of 8 U.S.C. § 1225(a) and that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). ECF No. 9 at 1. In asserting this statutory argument, respondents fail to acknowledge that this argument has been consistently rejected by courts in this District. *See, e.g.*, *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases). Respondents do not explain what, if any, binding precedent supports their statutory position. More fundamentally, respondents' focus is misplaced because they only address petitioner's due process claim through the lens of their statutory argument.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted). In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972));

3

*Shoimov v. Chestnut*, No. 1:25-cv-1603-CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026). I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

Immigration officials released petitioner on his own recognizance in November 2023. ECF No. 1 at 20. Since his release, petitioner has lived in the United States, subject to ICE supervision but outside of custody, for over two years. During that time, he has formed "enduring attachments of normal life." *See Morrissey*, 408 U.S. at 482. I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner acquired a private interest in continued release over the two years of his supervised

4

release.  *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation is high.  Prior to releasing petitioner in 2023, immigration officers necessarily determined that he presented neither a danger to the community nor a risk of flight.  *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community").  Absent a bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest.  *See Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)).  Respondents offer no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's re-detention; more generally, respondents give the court no reason to believe that any efforts were made to prevent erroneous deprivation of petitioner's liberty.  *See id*.  Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high."  *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted).  Indeed, respondents have provided no information about the

additional burden that would fall on them as a result of being required to provide a bond hearing. *See* ECF No. 9. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner argues that release is the proper relief. ECF No. 1 ¶¶ 61-62. Respondents do not address this issue. *See* ECF No. 9.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id.* at 128 (cleaned up). Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

Here, petitioner was re-detained by ICE "without any intervening violation, criminal charge, or failure to appear." ECF No. 1 ¶ 19. There is no indication that petitioner has violated his parole or been accused of a crime. There is no evidence, and respondents have not presented any argument, indicating that there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing. *Zinermon*, 494 U.S. at 128

6

(quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982)).  Indeed, respondents do not argue that petitioner is a danger to the community or a flight risk.

Under these circumstances, I find that the "typical remedy" of release is appropriate.  *See Munaf*, 553 U.S. at 693.  Petitioner's due process rights have been violated such that the proper relief is immediate release from custody, thereby returning him to the "status quo ante."  *See Cardin Alvarez*, 2025 WL 2898389, at *21.

### Conclusion

Accordingly, it is hereby RECOMMENDED that:

1.  The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2.  Respondents' motion to dismiss, ECF No. 9, be DENIED.

3.  Respondents be ordered to immediately release petitioner (A-Number: 245-442-699) from their custody.  Respondents shall not impose any additional restriction on him unless it is determined to be necessary at a future pre-deprivation/ custody hearing.  If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation hearing before an immigration judge at which the government shall bear the burden of justifying petitioner's detention by clear and convincing evidence.  This order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

4.  The Clerk of Court be directed to serve Golden State Annex Detention Facility with a copy of this order.

5.  The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See*

*Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    June 9, 2026    _____

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE